**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- X

| | |
|---|---|
| **MIGUEL ANGEL GRANDA CHICA, JULIO RAUL VEGA CARDENAS, DIEGO MAURICIO BORGA, JOSHUA DIFO, LUIS ALFONSO PEREZ PATINO, ANGEL JOSE AGUAYZA DUTAN, CARLOS LLIGUICHUZCHCA DUTAN, CELIO NEPTALI LLIGUICHUZCHCA, CHRISTIAN BASTIAN MUNOZ PANTOJA, and THE ESTATE OF EDISON PANORA, on behalf of themselves and all others similarly situated who were employed by Shallu Construction Corp.** | **Civil Action** <br><br> **Index No.: 21-CV-869** <br><br> **Jury Trial Demanded** |

**Plaintiffs,**

- against -

**SHALLU CONSTRUCTION CORP., SHALBRO CONSTRUCTION GROUP LLC, DEVINDER SINGH, AMNINDER SINGH, and SIMRANJEET SINGH**

**Defendants,**

---------------------------------------------------------------- X

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiffs Miguel Angel Granda Chica ("Chica"), Julio Raul Vega Cardenas

("Cardenas"), Joshua Difo ("Difo"), Angel Jose Aguayza Dutan ("Aguayza Dutan"),

Carlos Lliguichuzchca Dutan ("Carlos Dutan"), Celio Neptali Lliguichuzchca ("Celio"),

Christian Bastian Munoz Pantoja ("Pantoja"), and the Estate of Edison Panora ("Panora")

(collectively, the "Named Plaintiffs"), individually and on behalf of the putative class

(collectively "Plaintiffs"), by and through their attorneys, Arenson, Dittmar and Karban, as

and for their Complaint against Defendants Shallu Construction Corp., Shalbro

Construction Group LLC (the "Corporate Defendants"), Devinder Singh ("Devinder"),

Amninder Singh ("Amninder"), and Simranjeet Singh ("Simranjeet") (the "Individual Defendants") (collectively the "Defendants") upon personal knowledge as to themselves and upon information and belief, allege as follows:

## NATURE OF THE ACTION

1. This action arises out of Defendants' failure to pay Plaintiffs the minimum wage, overtime compensation, and other monies, as required by the Fair Labor Standards Act, 29 U.S.C §§ 201, *et seq.*, ("FLSA") and the New York Labor Law, N.Y. LAB. LAW §§ 190, *et seq.*, § 650, *et seq.* ("NYLL") and Defendants' subjecting Named Plaintiffs to a hostile work environment on the basis of their race (Hispanic) in violation of 42 U.S.C. § 1981, the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107, and the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

3. This Court is empowered to issue declaratory relief under 28 U.S.C. §§ 2201 and 2202.

4. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b), because all or a substantial part of the events or omissions giving rise to the claims occurred in the Eastern District of New York.

## PARTIES

5. Plaintiffs are individuals residing in the State of New York who were employees of Defendants.

6.    Upon information and belief, Defendant Shallu Construction Corp. ("Shallu") is a business incorporated in the State of New York, with its principal place of business at 81-09 101st Avenue, Ozone Park, New York, 11416.

7.    Upon information and belief, Defendant Shalbro Construction Group LLC ("Shalbro") is a business incorporated in the State of New York, with its principal place of business at 117-07 95th Avenue, Richmond Hill, New York, 11419.

8.    Upon information and belief, the Corporate Defendants are both in the construction business and operate in the state of New York.

9.    Upon information and belief, at all relevant times, the Corporate Defendants have had gross sales or business in excess of $500,000 annually.

10.    Upon information and belief, the Corporate Defendants are engaged in interstate commerce.

11.    Upon information and belief, Defendant Devinder Singh is a resident of the State of New York and at all relevant times was the Chief Executive Officer of Defendant Shallu, a closely-held corporation, as defined by the Business Corporations Law.

12.    Upon information and belief, Defendant Amninder (a/k/a "Manny") is a resident of the State of New York and at all relevant times was an officer of Defendant Shallu, a closely-held corporation, as defined by the Business Corporations Law.

13.    Upon information and belief, Defendant Simranjeet (a/k/a "Sunny") is a resident of the State of New York and at all relevant times was the Chief Executive Officer of Defendant Shalbro, a closely-held corporation, as defined by the Business Corporations Law, and an officer of Defendant Shallu.

14.   Upon information and belief, Defendant Devinder is the father of Defendants Amninder Singh and Simranjeet Singh.

15.   Upon information and belief, one or more of the Individual Defendants is/are the sole owners of the Corporate Defendants.

## COLLECTIVE ALLEGATIONS

16.   The Named Plaintiffs bring the First and Third claims in this action against Defendants as a collective action pursuant to the F.L.S.A., 29 U.S.C. § 216(b), on behalf of themselves and all other similarly-situated current and former non-exempt employees who have worked, and/or continue to work, for Defendants at any time during the three years prior to the filing of this action through the entry of judgment in this action (the "FLSA Collective").

17.   At all relevant times, the Named Plaintiffs and the FLSA Collective have been similarly situated, have had substantially similar job requirements, have been governed by similar pay practices and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them, among other things, the minimum wage and overtime compensation.

18.   Defendants are liable under the FLSA for, inter alia, failing to properly compensate Plaintiffs and the FLSA Collective, and as such, notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

19.   The FLSA Collective consists of numerous similarly-situated current and former employees of Defendants who were subject to the conduct complained of herein and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the action. Those similarly-situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

## CLASS ALLEGATIONS

20.    This action is properly maintainable as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

21.    Named Plaintiffs bring this action on behalf of themselves and a class consisting of all similarly situated persons who perform or have performed construction trade work for Defendants, between February 15, 2015 and the filing of this Complaint (the "Putative Class").

22.    The Putative Class is so numerous that joinder of all members is impracticable.

23.    The precise size of the Putative Class is unknown to Plaintiffs. The facts on which the calculation of that number can be based presently are within the sole control of the Defendants.  In addition, the names of all potential members of the Putative Class are not known.

24.    Upon information and belief, the size of the Putative Class is in excess of 40 individuals.

25.    The questions of law and fact common to the Putative Class predominate over any questions affecting only individual members.

26.    The claims of the Named Plaintiffs are typical of the claims of the Putative Class. The Named Plaintiffs and the Putative Class were all subject to Defendants' policies and willful practice of refusing to pay employees on a weekly basis, overtime compensation and provide Wage Theft Protection Act ("WTPA") notices.

27.    The Named Plaintiffs and their counsel will fairly and adequately protect the interests of the Putative Class. The Named Plaintiffs have retained counsel experienced in complex wage and hour collective and class action litigation.

28. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. A class action will also prevent unduly duplicative litigation resulting from inconsistent judgments pertaining to Defendants' unlawful practices and policies.

## STATEMENT OF FACTS

### FACTS COMMON TO ALL PLAINTIFFS

29. Upon information and belief, the Individual Defendants have made the decisions for Defendants Shallu and Shalbro, including decisions regarding hiring, firing, payment of wages, assignment of work, contractual matters, and all other administrative and company policy matters, either directly or through agents.

30. By way of example only, in approximately October 2016, Plaintiff Aguayza Dutan went to a worksite in Manhattan after being referred by a friend already working for Shallu. Plaintiff Aguayza Dutan was hired immediately and began work for Defendants that same day after meeting with Defendant Devinder.

31. By way of further example only, in approximately June 2018, Plaintiff Difo was hired to work for Defendants by Defendant Devinder.

32. Upon information and belief, the Individual Defendants have actively managed, supervised, and directed, and continue to actively manage, supervise and direct, the business and operations of Defendants Shallu and Shalbro, either directly or through agents.

33. Upon information and belief, the Individual Defendants have maintained records of Plaintiffs' employment and pay, either directly or through agents.

34. In approximately September 2018, Defendants Amninder and Simranjeet implemented a new payroll system requiring, Plaintiffs to use an app called "TSheets Time Tracker", to record plaintiffs' work hours.

35. The Individual Defendants controlled Plaintiffs' work schedules and sent work schedules with job locations and the names of workers reporting to each location to Plaintiffs via text and/or WhatsApp.

36. In sum, the Individual Defendants have exercised complete dominion and control over the Corporate Defendants.

37. Defendants acted as Plaintiffs' employers, within the meaning contemplated pursuant to 29 U.S.C. § 203(d) and N.Y. Lab. Law § 651(6), at all relevant times.

38. Plaintiffs were employees of Defendants, within the meaning contemplated pursuant to 29 U.S.C. § 203(e) and N.Y. Lab. Law § 651(5), at all relevant times.

39. Plaintiffs performed work in various trades for Defendants, including, but not limited to: demolition, masonry, tiling, pointing, caulking, scaffolding, bricklaying, cement work, molding, and water-proofing.

40. Upon information and belief, Defendants paid Plaintiffs in cash contained in individual envelopes, once per month.

41. Upon information and belief, at all relevant times, the activities of Defendants Shallu and Shalbro constituted an "enterprise," within the meaning of Sections 3(r) and 3(s) of the FLSA, 29 U.S.C.§§ 203(r), (s).

42. Upon information and belief, Defendants Shallu and Shalbro is each an "enterprise engaged in commerce" within the meaning contemplated pursuant to 29 U.S.C. § 201 et seq., and the cases interpreting it.

43. Upon information and belief, the Individual Defendants managed and exercised control over Plaintiffs, either directly or through agents.

44.　Upon information and belief, Plaintiffs regularly were required to perform work for Defendants without receiving proper wages, including but not limited to, "off-the-clock" work and overtime compensation as required by applicable federal and state law.

45.　Upon information and belief, the payments made to Plaintiffs by Defendants constitute "wages" as that term is defined under 29 U.S.C. § 203(m) and New York Labor Law § 651.

46.　Upon information and belief, Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain proper and complete timesheets or payroll records.

47.　As part of their regular business practices, Defendants intentionally, willfully, and repeatedly have engaged in a policy, pattern, and/or practice of violating the FLSA and NYLL. This policy, pattern, and/or practice has included but is not limited to:

a. failing to pay Plaintiffs the proper overtime compensation at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek;

b. failing to pay Plaintiffs for work spent "off-the-clock";

c. failing to pay Plaintiffs on a weekly basis;

d. failing to provide Plaintiffs adequate wage notices as required by the NYLL.

**DEFENDANTS CREATED AND FOSTERED A HOSTILE WORK ENVIRONMENT BASED ON RACE**

48.　Upon information and belief, the Individual Defendants are of South Asian descent.

49.　Many of the Plaintiffs, including all Named Plaintiffs, are of Latin American descent ("Hispanic Plaintiffs").

50.　Defendant Amninder perceived these Hispanic Plaintiffs as inferior people and subjected them to offensive, derogatory comments and conduct on a regular basis.

51.   Defendant Amninder did not subject Shallu employees of South Asian descent to the same offensive, derogatory comments and behavior.

52.   Defendant Amninder frequently used various derogatory terms in his native language when referring and speaking to the Hispanic workers.

53.   Defendant Amninder frequently called the Hispanic Plaintiffs "gandu" and would often call them over saying, "Gandu, come here".

54.   Urbandictionary.com's "Top Definition" for "gandu" defines it as: "Hindi word for arsehole. Also used to describe someone stupid and incredibly dim witted."

55.   Defendant Amninder frequently referred to the Hispanic Plaintiffs as "kameeney" or "kameena".

56.   After speaking to other South Asian employees of Shallu, some of the Hispanic Plaintiffs found out that this word roughly translated to "son of a bitch".

57.   Dict.hinkhoj.com, an online Hindi to English translator, has several translations for kameena, including, rascal, mean, cunt, son of a bitch, and turd.

58.   Defendant Amninder frequently referred to the Hispanic Plaintiffs as "Hispanic madlukas" or "Hispanic madlukas". Named Plaintiffs were unsure as to the exact pronunciation or spelling of this term.

59.   After speaking to other South Asian employees of Shallu, some of the Hispanic Plaintiffs found out that "madluka" also roughly translated to "son of a bitch."

60.   Defendant Amninder would often say "chal chal kutta" to the Hispanic Plaintiffs.

61.   After speaking to other South Asian employees of Shallu, some of the Hispanic Plaintiffs learned that "chal chal kutta" roughly translated to "hurry hurry dog."

62. Urbandictionary.com's "Top Definition" for "kutta" states: "Hindi word for "dog." Derogatory when used to describe people." The second definition for "kutta" states: "hindi/urdu for bitch or female dog. used mostly in a derogatory way."

63. Defendant Amninder told the Hispanic Plaintiffs that "Hispanic guys are lazy" on several occasions.

64. When Defendant Amninder used derogatory terms in his native language when referring and speaking to the Hispanic Plaintiffs, Shallu employees of South Asian descent would often laugh at the Hispanic Plaintiffs.

65. Even on occasions when Defendant Amninder used terms in his native language that Named Plaintiffs did not know the meaning of, they knew it to be derogatory based on his angry demeanor and condescending tone when speaking to them.

66. Defendant Amninder's derogatory conduct and comments towards the Hispanic Plaintiffs, offended the Hispanic Plaintiffs.

67. Plaintiff Aguayza Dutan made several complaints about Defendant Amninder's racist comments and conduct to Defendant Devinder on several occasions.

68. Defendant Devinder always responded by saying that he would speak to "Manny" (Defendant Amninder) and asked Plaintiff Aguayza Dutan to try and ignore "Manny". Defendant Devinder also sometimes responded, saying that, "Manny" must have just smoked marijuana and was high, so Plaintiff Aguayza Dutan should just forget it and ignore "Manny".

69. The pervasive, derogatory comments about their race made Hispanic Plaintiffs feel targeted and harassed based on their race.

70. The foregoing conduct by the Individual Defendants created and fostered a hostile and abusive environment based on race in which Hispanic Plaintiffs had to work.

71. The hostile work environment on the basis of race was intensified by the fact that the harassment was perpetrated by upper management and that Defendants failed to provide Named Plaintiffs with any anti-discrimination policy, anti-harassment policy or complaint procedure.

### PLAINTIFF MIGUEL ANGEL GRANDA CHICA

72. Defendants employed Plaintiff Chica from approximately July 25, 2016 through approximately February 8, 2019.

73. From approximately July 25, 2016 through approximately August 2016, Plaintiff Chica typically worked 6 days a week, from approximately 8:00 a.m. to 6:00 p.m.

74. From approximately September 2016 through approximately December 2016, Plaintiff Chica typically worked 6 days a week, from approximately 8:00 a.m. to 4:30 p.m.

75. From approximately April 2017 through approximately May 2017, Plaintiff Chica typically worked 6 days a week, from approximately 8:00 a.m. to 4:15 p.m.

76. From approximately June 2017 through approximately August 2017, Plaintiff Chica typically worked 6 days a week, from approximately 8:00 a.m. to 6:00 p.m.

77. From approximately September 2017 through approximately December 2017, Plaintiff Chica typically worked 6 days a week, from approximately 8:00 a.m. to 4:15 p.m.

78. From approximately April 2018 through approximately May 2018, Plaintiff Chica typically worked 6 days a week, from approximately 8:00 a.m. to 4:15 p.m.

79. From approximately June 2018 through approximately August 2018, Plaintiff Chica typically worked 6 days a week, from approximately 8:00 a.m. to 6:00 p.m.

80. From approximately September 2018 through approximately December 2018, Plaintiff Chica typically worked 6 days a week, from approximately 8:00 a.m. to 4:15 p.m.

81. From approximately July 25, 2016 through approximately February 2017, Defendants typically paid Plaintiff Chica a regular daily rate of $130 covering 8 hours of work.

82. From approximately March 2017 through approximately July 2018, Defendants typically paid Plaintiff Chica a regular daily rate of $140 covering 8 hours of work.

83. From approximately August 2018 through February 18, 2019, Defendants typically paid Plaintiff Chica a regular daily rate of $160 covering 8 hours of work.

84. Throughout his employment, Defendants never paid Plaintiff Chica when he worked "off-the-clock", packing up equipment and cleaning the worksite, for approximately 15 to 30 minutes after 4:00 p.m.

85. Throughout his employment, during the summer months of June, July and August, when Plaintiff Chica worked until approximately 6:00 p.m., Defendants typically paid Plaintiff Chica for hours after 4:00 p.m. at an hourly rate calculated by dividing his daily rate of pay by 8 hours.

86. Throughout his employment, Plaintiff Chica was typically provided with a 30-minute meal break per day.

87. Throughout his employment, Defendants failed to pay Plaintiff Chica the proper overtime compensation at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek.

88. Throughout his employment, Defendants failed to pay Plaintiff Chica on a weekly basis.

89. Defendants failed to provide Plaintiff Chica with a notice of pay rate and basis thereof, at the time of hiring, as required by NYLL § 195(1).

90. Defendants failed to provide Plaintiff Chica with statements of wages with every payment of wages, as required by NYLL § 195(3).

### PLAINTIFF JULIO RAUL VEGA CARDENAS

91. Defendants employed Plaintiff Cardenas from approximately August 15, 2015 through approximately February 18, 2019.

92. From approximately August 14, 2015 through approximately August 31, 2015, Plaintiff Cardenas typically worked 6 days a week, from approximately 8:00 a.m. to 6:00 p.m.

93. From approximately September 2015 through approximately December 2015, Plaintiff Cardenas typically worked 6 days a week, from approximately 8:00 a.m. to 4:15 p.m.

94. From approximately April 2016 through approximately May 2016, Plaintiff Cardenas typically worked 6 days a week, from approximately 8:00 a.m. to 4:15 p.m.

95. From approximately June 2016 through approximately August 2016, Plaintiff Cardenas typically worked 6 days a week, from approximately 8:00 a.m. to 6:00 p.m. During this period, Plaintiff Cardenas worked on Sundays from approximately 8:00 a.m. to 4:00 p.m., on approximately three occasions.

96. From approximately September 2016 through approximately December 2016, Plaintiff Cardenas typically worked 6 days a week, from approximately 8:00 a.m. to 4:15 p.m.

97. From approximately April 2017 through approximately May 2017, Plaintiff Cardenas typically worked 6 days a week, from approximately 8:00 a.m. to 4:15 p.m.

98. From approximately June 2017 through approximately August 2017, Plaintiff Cardenas typically worked 6 days a week, from approximately 8:00 a.m. to 6:00 p.m. During this period, Plaintiff Cardenas worked on Sundays from approximately 8:00 a.m. to 4:00 p.m., on approximately three occasions.

99. From approximately September 2017 through approximately December 2017, Plaintiff Cardenas typically worked 6 days a week, from approximately 8:00 a.m. to 4:15 p.m.

100. From approximately April 2018 through approximately May 2018, Plaintiff Cardenas typically worked 6 days a week, from approximately 8:00 a.m. to 4:15 p.m.

101. From approximately June 2018 through approximately August 2018, Plaintiff Cardenas typically worked 6 days a week, from approximately 8:00 a.m. to 6:00 p.m. During this period, Plaintiff Cardenas worked on Sundays from approximately 8:00 a.m. to 4:00 p.m., on approximately three occasions.

102. From approximately September 2018 through approximately December 2018, Plaintiff Cardenas typically worked 6 days a week, from approximately 8:00 a.m. to 4:15 p.m.

103. Throughout his employment, Plaintiff Cardenas typically worked approximately 3 days per week during the months of January, February and March.

104. From approximately August 15, 2015 through approximately July 31, 2017, Defendants typically paid Plaintiff Cardenas a regular daily rate of $170 covering 8 hours of work.

105. From approximately August 2017 through approximately August 31, 2018, Defendants typically paid Plaintiff Cardenas a regular daily rate of $180 covering 8 hours of work.

106. From approximately September 1, 2018 through approximately February 18, 2019, Defendants typically paid Plaintiff Cardenas a regular daily rate of $200 covering 8 hours of work.

107. Throughout his employment, Defendants never paid Plaintiff Cardenas when he worked "off-the-clock", packing up equipment and cleaning the worksite, for approximately 15 to 30 minutes after 4:00 p.m.

108. Throughout his employment, during the summer months of June, July and August, when Plaintiff Cardenas worked until approximately 6:00 p.m., Defendants typically paid Plaintiff Cardenas for hours after 4:00 p.m. at an hourly rate calculated by dividing his daily rate of pay by 8 hours.

109. Throughout his employment, Plaintiff Cardenas typically was provided with a 30-minute meal break per day.

110. Throughout his employment, Defendants failed to pay Plaintiff Cardenas the proper overtime compensation at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek.

111. Throughout his employment, Defendants failed to pay Plaintiff Cardenas on a weekly basis.

112. Defendants failed to provide Plaintiff Cardenas with a notice of pay rate and basis thereof, at the time of hiring, as required by NYLL § 195(1).

113. Defendants failed to provide Plaintiff Cardenas with statements of wages with every payment of wages, as required by NYLL § 195(3).

**PLAINTIFF JOSHUA DIFO**

114. Defendants employed Plaintiff Difo from approximately June 26, 2018 through approximately September 7, 2018.

115. From approximately June 26, 2018 through approximately July 31, 2018, Plaintiff Difo typically worked 5 days a week, from approximately 6:30 a.m. to 4:00 p.m.

116. From approximately August 1, 2018 through approximately September 7, 2018, Plaintiff Difo typically worked 6 days a week, from approximately 6:30 a.m. to 4:00 p.m.

117. From approximately June 26, 2018 through approximately July 2018, Defendants typically paid Plaintiff Difo approximately $110 per day.

118. From approximately August 1, 2018 through approximately September 7, 2018, Defendants typically paid Plaintiff Difo approximately $120 per day.

119. Throughout his employment, Plaintiff Difo was typically provided with a 30-minute meal break per day.

120. Throughout his employment, Defendants paid Plaintiff Difo for 9 hours of work per day and never paid Plaintiff Difo for his off-the-clock work from 6:30 a.m. to 7:00 a.m.

121. Throughout his employment, Defendants failed to pay Plaintiff Difo on a weekly basis.

122. Throughout his employment, Defendants failed to pay Plaintiff Difo the proper overtime compensation at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek.

123. Defendants failed to provide Plaintiff Difo with a notice of pay rate and basis thereof, at the time of hiring, as required by NYLL § 195(1).

124. Defendants failed to provide Plaintiff Difo with statements of wages with every payment of wages, as required by NYLL § 195(3).

### PLAINTIFF ANGEL JOSE AGUAYZA DUTAN

125. Defendants employed Plaintiff Aguayza Dutan from approximately October 24, 2016 through approximately May 3, 2019.

126. From approximately October 24, 2016 through approximately August 2017, Plaintiff Aguayza Dutan typically worked 6 days a week, from approximately 8:00 a.m. to 4:30 p.m. Mondays to Fridays and from approximately 8:00 a.m. to 4:00 p.m. on Saturdays.

127.  From approximately September 2017 through approximately December 2017, Plaintiff Aguayza Dutan typically worked 6 days a week, from approximately 8:00 a.m. to 4:30 p.m., four days a week and from approximately 8:00 a.m. to 6:00 p.m., two days a week.

128.  From approximately January 2018 through approximately December 2018, Plaintiff Aguayza Dutan typically worked 6 days a week, from approximately 8:00 a.m. to 4:30 p.m. During this period, Plaintiff Aguayza Dutan typically worked from approximately 8:00 a.m. to 8:00 p.m., approximately two weeks per month.

129.  From approximately January 2019 through approximately May 3, 2019, Plaintiff Aguayza Dutan typically worked 6 days a week, from approximately 8:00 a.m. to 4:30 p.m. Mondays to Fridays and from approximately 8:00 a.m. to 4:00 p.m. on Saturdays.

130.  From approximately October 24, 2016 through approximately March 2017, Defendants typically paid Plaintiff Aguayza Dutan a regular daily rate of $160 covering 8 hours of work.

131.  From approximately April 2017 through approximately October 2017, Defendants typically paid Plaintiff Aguayza Dutan a regular daily rate of $170 covering 8 hours of work.

132.  From approximately November 2017 through approximately April 2018, Defendants typically paid Plaintiff Aguayza Dutan a regular daily rate of $180 covering 8 hours of work.

133.  From approximately May 2018 through approximately September 2018, Defendants typically paid Plaintiff Aguayza Dutan a regular daily rate of $190 covering 8 hours of work.

134. From approximately October 2018 through approximately May 3, 2019, Defendants typically paid Plaintiff Aguayza Dutan a regular daily rate of $195 covering 8 hours of work.

135. Throughout his employment, when Plaintiff Aguayza Dutan recognized issues with his pay, he typically texted Defendant Devinder to complain.

136. Throughout his employment, Plaintiff Aguayza Dutan was typically provided with a 30-minute meal break per day.

137. Throughout his employment, Defendants never paid Plaintiff Aguayza Dutan for his "off-the-clock" work, packing up equipment and cleaning the worksite, between 4:00 p.m. and 4:30 p.m.

138. Throughout his employment, when Plaintiff Aguayza Dutan worked until approximately 6:00 p.m., Defendants typically paid Plaintiff Aguayza Dutan for hours after 4:00 p.m. at an hourly rate calculated by dividing his daily rate of pay by 8 hours.

139. Throughout his employment, Defendants failed to pay Plaintiff Aguayza Dutan on a weekly basis.

140. Throughout his employment, Defendants failed to pay Plaintiff Aguayza Dutan the proper overtime compensation at the rate of one-and-one-half times the regular rate for work in excess of forty (40) hours per workweek.

141. Defendants failed to provide Plaintiff Aguayza Dutan with a notice of pay rate and basis thereof, at the time of hiring, as required by NYLL § 195(1).

142. Defendants failed to provide Plaintiff Aguayza Dutan with statements of wages with every payment of wages, as required by NYLL § 195(3).

**PLAINTIFF CARLOS LLIGUICHUZCHCA DUTAN**

143. Defendants employed Plaintiff Carlos Dutan from approximately May 23, 2016 through approximately March 2018.

144. In approximately August 2016, Plaintiff Carlos Dutan did not work for Defendants for approximately three weeks.

145. Throughout his employment, Plaintiff Carlos Dutan typically worked a schedule of 6 days a week, from approximately 8:00 a.m. to approximately 4:15 p.m.

146. Throughout his employment, Plaintiff Carlos Dutan typically worked until 6:00 p.m. approximately once per month.

147. From approximately May 23, 2016 through approximately July 31, 2016, Defendants typically paid Plaintiff Carlos Dutan a regular daily rate of $130 covering 8 hours of work.

148. From approximately August 2016 through approximately March 2018, Defendants typically paid Plaintiff Carlos Dutan a regular daily rate of $140 covering 8 hours of work.

149. Throughout his employment, Plaintiff Carlos Dutan was typically provided with a 30-minute meal break per day.

150. Throughout his employment, Defendants never paid Plaintiff Carlos Dutan for his "off-the-clock" work, packing up equipment and cleaning the worksite, between 4:00 p.m. and 4:30 p.m.

151. Throughout his employment, when Plaintiff Carlos Dutan worked until approximately 6:00 p.m., Defendants typically paid Plaintiff Carlos Dutan for hours after 4:00 p.m. at an hourly rate calculated by dividing his daily rate of pay by 8 hours.

152. Throughout his employment, Defendants failed to pay Plaintiff Carlos Dutan the proper overtime compensation at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek.

153. Throughout his employment, Defendants failed to pay Plaintiff Carlos Dutan on a weekly basis.

154. Defendants failed to provide Plaintiff Carlos Dutan with a notice of pay rate and basis thereof, at the time of hiring, as required by NYLL § 195(1).

155. Defendants failed to provide Plaintiff Carlos Dutan with statements of wages with every payment of wages, as required by NYLL § 195(3).

**PLAINTIFF CELIO NEPTALI LLIGUICHUZCHCA DUTAN**

156. Defendants employed Plaintiff Celio from approximately December 26, 2016 through approximately October 15, 2018.

157. Throughout his employment, Plaintiff Celio typically worked 5 days a week, Monday through Friday, from approximately 8:00 a.m. to 4:15 p.m., twice per month, and 6 days a week, working on Saturdays, from approximately 8:00 a.m. to 4:00 p.m., twice per month.

158. Throughout his employment, in the summertime, Plaintiff Celio worked until as late as 9:00 p.m. on various occasions.

159. From approximately December 26, 2016 through approximately July 2018, Defendants typically paid Plaintiff Celio a regular daily rate of $160 covering 8 hours of work.

160. From approximately August 2018 through approximately October 15, 2018, Defendants typically paid Plaintiff Celio a regular daily rate of $180 covering 8 hours of work.

161. Throughout his employment, Plaintiff Celio was typically provided with a 30-minute meal break per day.

162. Throughout his employment, Defendants never paid Plaintiff Celio when he worked "off-the-clock", packing up equipment and cleaning the worksite, for approximately 15 minutes after 4:00 p.m.

163. Throughout his employment, when Plaintiff Celio worked until approximately 6:00 p.m., Defendants typically paid Plaintiff Celio for hours after 4:00 p.m. at an hourly rate calculated by dividing his daily rate of pay by 8 hours.

164. Throughout his employment, Defendants failed to pay Plaintiff Celio the proper overtime compensation at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek.

165. Throughout his employment, Defendants failed to pay Plaintiff Celio on a weekly basis.

166. Defendants failed to provide Plaintiff Celio with a notice of pay rate and basis thereof, at the time of hiring, as required by NYLL § 195(1).

167. Defendants failed to provide Plaintiff Celio with statements of wages with every payment of wages, as required by NYLL § 195(3).

### PLAINTIFF CHRISTIAN BASTIAN MUNOZ PANTOJA

168. Defendants employed Plaintiff Pantoja from approximately April 15, 2018 through approximately February 8, 2019.

169. Throughout his employment, Plaintiff Pantoja typically worked 5 days a week, from approximately 8:00 a.m. to 4:15 p.m. on two days of the week and from approximately 8:00 a.m. to 6:00 p.m. on the other three days.

170. Throughout his employment, Plaintiff Pantoja also worked an additional sixth day on Saturdays, from approximately 8:00 a.m. to 4:00 p.m., approximately once per month.

171. Throughout his employment, Defendants typically paid Plaintiff Pantoja a regular daily rate of $160 covering 8 hours of work.

172. Throughout his employment, Plaintiff Pantoja was typically provided with a 30-minute meal break per day.

173. Throughout his employment, when Plaintiff Pantoja worked until approximately 6:00 p.m., Defendants typically paid Plaintiff Pantoja for hours after 4:00 p.m. at an hourly rate calculated by dividing his daily rate of pay by 8 hours.

174. Throughout his employment, Defendants failed to pay Plaintiff Pantoja the proper overtime compensation at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek.

175. Throughout his employment, Defendants failed to pay Plaintiff Pantoja on a weekly basis.

176. Defendants failed to provide Plaintiff Pantoja with a notice of pay rate and basis thereof, at the time of hiring, as required by NYLL § 195(1).

177. Defendants failed to provide Plaintiff Pantoja with statements of wages with every payment of wages, as required by NYLL § 195(3).

### PLAINTIFF EDISON PANORA

178. Defendants employed Plaintiff Panora from approximately February 6, 2017 through approximately February 23, 2019.

179. Throughout his employment, Plaintiff Panora typically worked 5 days a week, from approximately 8:00 a.m. to 4:00 p.m. on two days of the week and from approximately 8:00 a.m. to 6:00 p.m. on the other three days.

180. Throughout his employment, Defendants typically paid Plaintiff Panora a regular daily rate of $160 covering 8 hours of work.

181. Throughout his employment, Plaintiff Panora was typically provided with a 30-minute meal break per day.

182. Throughout his employment, when Plaintiff Panora worked until approximately 6:00 p.m., Defendants typically paid Plaintiff Pantoja for hours after 4:00 p.m. at an hourly rate calculated by dividing his daily rate of pay by 8 hours.

183. Throughout his employment, Defendants failed to pay Plaintiff Panora the proper overtime compensation at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek.

184. Throughout his employment, Defendants failed to pay Plaintiff Panora on a weekly basis.

185. Defendants failed to provide Plaintiff Panora with a notice of pay rate and basis thereof, at the time of hiring, as required by NYLL § 195(1).

186. Defendants failed to provide Plaintiff Panora with statements of wages with every payment of wages, as required by NYLL § 195(3).

## FIRST CAUSE OF ACTION
### FAIR LABOR STANDARDS ACT – UNPAID OVERTIME

187. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

188. Named Plaintiffs have consented to be parties to this action pursuant to 29 U.S.C. § 216(b).

189. Defendants have engaged in a widespread pattern and practice of violating the FLSA, as detailed in this complaint.

190. The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 et seq., and the supporting federal regulations, apply to Defendants and protect Plaintiffs.

191. Defendants failed to maintain proper employment records as required by the FLSA and 29 C.F.R. 516.

192. Defendants willfully, knowingly and repeatedly refused to pay Plaintiffs overtime compensation at the statutory rate of time-and-a-half for all hours worked in excess of forty hours per workweek, as required by the FLSA.

193. Because of the Defendants' willful violations of the FLSA, a three-year statute of limitations applies to such violations pursuant to 29 U.S.C. § 255.

194. As a result of the unlawful acts of Defendants, Plaintiffs have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, as well as, liquidated damages, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**

195. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

196. The overtime provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and Plaintiffs.

197. Defendants failed to maintain proper employment records as required by N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.6 and the New York Labor Law, N.Y. LAB. LAW §§ 195(4) and 661.

198. The regulations accompanying the New York Labor Law, N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2, require an employer to pay an employee overtime "at a wage rate of one and one-half times the employee's regular rate."

199. The New York Labor Law, N.Y. LAB. LAW § 663, provides that "[i]f any employee is paid by his employer less than the wage to which he is entitled under the provisions of this

article, he may recover in a civil action the amount of any such underpayments, together with costs and such reasonable attorney's fees."

200. Upon information and belief, Plaintiffs worked more than forty (40) hours a week while working for Defendants.

201. Defendants failed to pay Plaintiffs overtime compensation at a rate of not less than one and one-half times the regular rate of pay for all hours worked in excess of forty (40) each week, as required by the NYLL.

202. Consequently, by failing to pay to Named Plaintiffs and other members of the New York Class the overtime compensation for work they performed after the first forty (40) hours worked in a week, Defendants violated the New York Labor Law, N.Y. LAB. LAW § 663 and N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2.

203. Defendants' failure to pay the required overtime wages, as set forth above was willful within the meaning of §§ 198 and 663 of the New York Labor Law.

204. As a result of the unlawful acts of Defendants, Plaintiffs have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the New York Labor Law, NYLL § 198, 650 et seq.

### THIRD CAUSE OF ACTION
### FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE FOR OFF-THE-CLOCK WORK

205. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

206. Named Plaintiffs have consented to be parties to this action pursuant to 29 U.S.C. § 216(b).

207. Defendants have engaged in a widespread pattern and practice of violating the FLSA, as detailed in this complaint.

208. Defendants failed to provide the proper minimum wage to Plaintiffs for their "off-the-clock" work, packing up equipment and cleaning the worksite, after 4:00 p.m.

209. Defendants failed to maintain proper employment records as required by the FLSA and 29 C.F.R. 516.

210. Defendants were required to pay Plaintiffs at a rate not less than the minimum wage rate under the FLSA for all hours worked.

211. Defendants willfully and knowingly failed to pay Plaintiffs the required minimum wages under the FLSA for Plaintiffs' off-the-clock work.

212. Because of the Defendants' willful violations of the FLSA, a three-year statute of limitations applies to such violations pursuant to 29 U.S.C. § 255.

213. As a result of the unlawful acts of the Defendants, Plaintiffs have been deprived of wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## FOURTH CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID MINIMUM WAGE FOR OFF-THE-CLOCK WORK

214. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

215. The minimum wage provisions set forth in the NYLL and its supporting regulations apply to Defendants and Plaintiffs.

216. Defendants failed to maintain proper employment records as required by N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.6 and the New York Labor Law, N.Y. LAB. LAW §§ 195(4) and 661.

217. Defendants were required to pay Plaintiffs at a rate not less than the minimum wage rate under the NYLL for all hours worked.

218. Defendants failed to provide the proper minimum wage to Plaintiffs for their "off-the-clock" work, packing up equipment and cleaning the worksite, after 4:00 p.m.

219. By virtue of Defendants' failure to pay Plaintiffs the minimum wage for all hours worked, Defendants have willfully violated NYLL Article 19, §§ 650, et seq., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. 142-2.1.

220. As a result of the unlawful acts of the Defendants, Plaintiffs have been deprived of wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the New York Labor Law, NYLL § 198, 650 et seq.

### FIFTH CAUSE OF ACTION
**Harassment, Discrimination, and Hostile Work Environment on the Basis of Race Under 42 U.S.C. §1981**

221. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

222. 42 U.S.C. § 1981 prohibits discrimination—including the fostering of a hostile work environment—against an employee because of the employee's race.

223. As more fully set forth above, Defendants subjected Named Plaintiffs to racial harassment and a hostile work environment on the basis of their perceived race (Hispanic).

224. Defendants created, fostered, maintained, participated in, approved of, condoned, ratified and failed to prevent and correct the racial harassment and hostile work environment to which Named Plaintiffs were subjected on the basis of their perceived race (Hispanic).

225. The racial harassment discrimination and hostile work environment on the basis of race (Hispanic) perpetrated against Named Plaintiffs and others similarly situated, were part of a pattern and practice of racial harassment (Hispanic), discrimination, and hostile work environment on the basis of race (Hispanic) created, fostered, maintained, participated in, approved of, condoned and ratified by Defendants.

226. The racial harassment (Hispanic) and hostile work environment on the basis of race (Hispanic) perpetrated against Named Plaintiffs and others similarly situated, were intentional and willful in nature.

227. The racial harassment (Hispanic) discrimination and hostile work environment on the basis of race (Hispanic) perpetrated against Named Plaintiffs and others similarly situated, were continuing in nature.

228. As a result of the foregoing, Named Plaintiffs have suffered and continue to suffer, among other things, extensive physical, mental, emotional, and economic injuries.

229. Therefore, Plaintiffs are entitled to, among other things, economic, compensatory and punitive damages, along with attorneys' fees and costs.

**<u>SIXTH CAUSE OF ACTION</u>**
**Discrimination on the Basis of Race in Violation of Section 8-107 of Title 8 of The New York City Charter and Administrative Code ("NYCHRL")**

230. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

231. The NYCHRL does not distinguish between claims of discrimination and harassment or hostile work environment, a term of art borrowed from the more restrictive Title VII jurisprudence.

232. The NYCHRL prohibits unequal treatment for a discriminatory purpose by an employer, regardless of whether the plaintiff pleads a hostile work environment, harassment, or other category of discrimination.

233. As set forth more fully above, Defendants subjected Named Plaintiffs to discrimination on the basis of their race (Hispanic).

234. As set forth more fully above, Defendants participated in, approved of, condoned and ratified the discriminatory practices perpetrated against Named Plaintiffs.

235. The discrimination that Defendants perpetrated against Named Plaintiffs was continuing and intentional in nature.

236. As a result of Defendants' discrimination Named Plaintiffs have suffered, and continue to suffer, inter alia, pain and suffering, emotional distress, mental anguish, and other non-pecuniary losses, as to which they are entitled to past, present and future compensatory damages, in the maximum amount permitted by law.

237. Because Defendants acted with malice or reckless indifference to Named Plaintiffs' rights, Named Plaintiffs are entitled to punitive damages in an amount to be determined at trial, but not less than the maximum amount permitted by law.

## SEVENTH CAUSE OF ACTION
***Aiding, Abetting and Inciting*** – **Discrimination on the Basis of Race in Violation of Section 8-107 of Title 8 of The New York City Charter and Administrative Code ("NYCHRL")**

238. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

239. As set forth more fully above, Defendant Devinder aided, abetted, incited, compelled and/or coerced unlawful practices, including discriminating against Named Plaintiffs on the basis of their race (Hispanic) and/or attempted to do so.

240. As a result, Plaintiffs have suffered, and continue to suffer, inter alia, pain and suffering, emotional distress, mental anguish, and other non-pecuniary losses, as to which they are entitled to past, present and future compensatory damages, in the maximum amount permitted by law.

241. Because Defendant Devinder acted with reckless indifference to Plaintiffs' rights, Plaintiff are entitled to punitive damages in an amount to be determined at trial, but not less than the maximum amount permitted by law.

**EIGHT CAUSE OF ACTION**
**Discrimination on the Basis of Race in Violation of N.Y. Exec. Law § 296 *et seq.*
("NYSHRL")**

242. The NYSHRL does not distinguish between claims of discrimination and harassment or hostile work environment, a term of art borrowed from the more restrictive Title VII jurisprudence.

243. The NYSHRL prohibits unequal treatment for a discriminatory purpose by an employer, regardless of whether the plaintiff pleads a hostile work environment, harassment, or other category of discrimination.

244. The NYSHRL has been amended, in an attempt to align it with the NYCHRL, with explicit provisions requiring courts to construe the NYSHRL "liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed."

245. As set forth more fully above, Defendants subjected Named Plaintiffs to discrimination on the basis of their race (Hispanic).

246. As set forth more fully above, Defendants participated in, approved of, condoned and ratified the discriminatory practices perpetrated against Named Plaintiffs.

247. The discrimination that Defendants perpetrated against Named Plaintiffs was continuing and intentional in nature.

248. As a result of Defendants' discrimination Named Plaintiffs have suffered, and continue to suffer, inter alia, pain and suffering, emotional distress, mental anguish, and other non-pecuniary losses, as to which they are entitled to past, present and future compensatory damages, in the maximum amount permitted by law.

249. Because Defendants acted with malice or reckless indifference to Named Plaintiffs' rights, Named Plaintiffs are entitled to punitive damages in an amount to be determined at trial, but not less than the maximum amount permitted by law.

## NINTH CAUSE OF ACTION
### *Aiding, Abetting and Inciting* – Discrimination on the Basis of Race in Violation of N.Y. Exec. Law § 296 *et seq.* ("NYSHRL")

250. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

251. As set forth more fully above, Defendant Devinder aided, abetted, incited, compelled and/or coerced unlawful practices, including discriminating against Named Plaintiffs on the basis of their race (Hispanic) and/or attempted to do so.

252. As a result, Plaintiffs have suffered, and continue to suffer, inter alia, pain and suffering, emotional distress, mental anguish, and other non-pecuniary losses, as to which they are

entitled to past, present and future compensatory damages, in the maximum amount permitted by law.

253. Because Defendant Devinder acted with reckless indifference to Plaintiffs' rights, Plaintiff are entitled to punitive damages in an amount to be determined at trial, but not less than the maximum amount permitted by law.

## TENTH CAUSE OF ACTION
## NEW YORK LABOR LAW 191(1)(a) – UNTIMELY WAGE PAYMENTS

254. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

255. Defendants paid Plaintiffs on a monthly basis.

256. Defendants failed to pay Plaintiffs on a weekly basis, as required by NYLL § 191(1)(a).

257. Upon information and belief, Defendants' failure to pay Plaintiffs on a weekly basis, as required by NYLL § 191(1)(a) was willful and intentional.

258. As a result of Defendants' failure to pay Plaintiffs on a weekly basis, Plaintiffs are entitled to recover from Defendants, liquidated damages and interest on wages paid later than on a weekly basis, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to NYLL.

## ELEVENTH CAUSE OF ACTION
## NEW YORK LABOR LAW – WAGE THEFT PREVENTION ACT VIOLATION

259. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

260. Defendants failed to furnish Plaintiffs with the wage notice(s) required by NYLL § 195 (1).

261. Defendants failed to furnish Plaintiffs with the wage statement(s) required by NYLL § 195 (3).

262. Upon information and belief, Defendants' failure to furnish Plaintiffs with the notices and statements pursuant to NYLL § 195 (1) and (3) was willful and intentional.

263. NYLL § 195 (1) requires that employers furnish employees at the time of hire a notice containing, among other things, the rate or rates of pay and the basis thereof; the regular pay day designated by the employer, the name of the employer; any "doing business as" names used by the employer; the address of the employer's main office or principal place of business and the telephone number of the employer.

264. NYLL § 195 (3) requires that employers furnish each employee with a statement with every payment listing gross wages, deductions and net wages, and upon request of an employee, an explanation of the computation of wages.

265. NYLL § 195 (4) requires, among other things, that employers establish and maintain, for at least six (6) years payroll records showing the hours worked, gross wages, deductions and net wages for each employee.

266. NYLL § 661 requires that Defendants maintain, inter alia, true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, and the wages paid to all employees.

267. 12 N.Y.C.R.R. § 142-2.6 requires Defendants to establish, maintain and preserve, for six (6) years, weekly payroll records showing, inter alia, each employee's name, wage rate, number of hours worked daily and weekly, amount of gross and net wages, deductions from gross wages, and any allowances claimed as part of the minimum wage.

268. N.Y.C.R.R. § 142-2.7 requires Defendants to furnish each employee with a statement with every payment of wages, listing hours worked, rates paid, gross and net wages, deductions, and allowances, if any, claimed as part of the minimum wage.

269. Defendants failed to provide Plaintiffs with any of the requisite notices and statements described above in the foregoing paragraphs.

270. As a result of Defendants' failure to furnish the wage notices pursuant to NYLL 195(1), Plaintiffs are each entitled to statutory penalties up to a maximum of $5,000, as well as attorneys' fees and costs, pursuant to NYLL § 198(1)(b).

271. As a result of Defendants' failure to furnish the wage statements pursuant to NYLL 195 (3), Plaintiffs are each entitled to statutory penalties up to a maximum of $5,000, as well as attorneys' fees and costs, pursuant to NYLL § 198(1)(d).

## **PRAYER FOR RELIEF**

WHEREFORE, the Named Plaintiffs, on behalf of themselves and, as applicable, all other members of the FLSA Collective and Putative Class, respectfully request that this Court grant the following relief:

(1) That, at the earliest possible time, Named Plaintiffs be allowed to give notice of this collective action, or that the court issue such notice, to all persons who are presently, or have been at any time during the six years immediately preceding the filing of this suit, up through and including the date of this court's issuance of court-supervised notice, employed by Defendants as non-exempt employees. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper hourly and overtime compensation;

(2) Certification of this action as a class action pursuant to FRCP Rule 23 on behalf of the members of the Putative Class and appointing the Named Plaintiffs and their counsel to represent the Putative Class;

(3) Designation of certain Named Plaintiffs as representatives of the Putative Class, and counsel of record as Class Counsel;

(4) A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

(5) Appropriate equitable and injunctive relief to remedy Defendant's violations of the FLSA and NYLL;

(6) An award of monetary damages to be determined at trial for wages owed, unpaid overtime compensation, penalties, liquidated damages and all other monies owed to Plaintiffs;

(7) An award of compensatory and punitive damages, to be determined at trial, for Defendants' violations of 42 U.S.C. § 1981 and the NYCHRL;

(8) An award of pre-judgment and post-judgment interest;

(9) An award of attorneys' fees and costs of this action;

(10) An injunction against the Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

(11) Such other and further relief as this Court deems just and proper.

Dated: New York, New York
       February 17, 2021

Respectfully submitted,

**ARENSON, DITTMAR & KARBAN**


_____/s_____

By: Steven Arenson
200 Park Avenue, Suite 1700
New York, New York 10166
Tel:    (212) 490-3600
Fax:    (212) 682-0278
steve@adklawfirm.com
*Attorneys for Plaintiffs*