UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X
                                                        :

MIGUEL ANGEL GRANDA CHICA, JULIO RAUL     :       21-CV-869 (ARR) (SJB)
VEGA CARDENAS, JOSHUA DIFO, LUIS ALFONSO   :
PEREZ PATINO, ANGEL JOSE AGUAYZA DUTAN,   :      <u>NOT FOR ELECTRONIC</u>
CARLOS LLIGUICHUZCHCA DUTAN, CELIO       :      <u>OR PRINT PUBLICATION</u>
NEPTALI LLIGUICHUZCHCA, CHRISTIAN BASTIAN  :
MUNOZ PANTOJA, THE ESTATE OF EDISON     :
PANORA, FRANKLIN GUARACA, and ANGEL      :      **OPINION & ORDER**
FERNANDO CASTILLO CANTOS, on behalf of     :
themselves and all others similarly situated who were :
employed by SHALLU CONSTRUCTION CORP.,   :
SHALBRO CONSTRUCTION GROUP LLC, and ELITE :
DEVELOPERS AND RESTORATION CO., a/k/a ELITE :
DEVELOPER AND CONSTRUCTION CORPORATION, :
                                                         :

                              *Plaintiffs*,       :
                                                          :

     -against-                            :
                                                          :

SHALLU CONSTRUCTION CORP., SHALBRO     :
CONSTRUCTION GROUP LLC, ELITE DEVELOPERS  :
AND RESTORATION CO., a/k/a ELITE DEVELOPER  :
AND CONSTRUCTION CORP., DEVINDER SINGH,   :
AMNINDER SINGH, and SIMRANJEET SINGH,    :
                                                          :

                             *Defendants*.     :
                                                          :
-------------------------------------------------------------------- X

ROSS, United States District Judge:

      Plaintiffs brought this collective and putative class action alleging that defendants,

individuals and corporations involved in the construction industry, failed to compensate them as

required for overtime and off-the-clock work and harassed plaintiffs, creating a hostile work

environment based on plaintiffs' race. Four defendants—Amninder Singh, Simranjeet Singh,

Shalbro Construction Group, LLC, and Elite Developers and Restoration Co. a/k/a Elite Developer

and Construction Corp.—now move to dismiss the compensation claims against them. All

defendants move to dismiss plaintiffs' hostile work environment claims. For the reasons stated below, defendants' motions are denied in their entirety.

## BACKGROUND

*Factual Background*[1]

For all or part of the period between February 18, 2015 and July 2, 2021, plaintiffs performed construction work for defendants. Second Am. Compl. ¶ 23, ECF No. 29 ("SAC"). Defendant Devinder Singh ("Devinder") is the Owner/President and Chief Executive Officer ("CEO") of Shallu Construction Corp. ("Shallu"), the CEO of Elite Developers and Restoration Co. a/k/a Elite Developer and Construction Corp. ("Elite"), and an officer of Shalbro Construction Group, LLC ("Shalbro"). *Id.* ¶¶ 12, 15, 71. Devinder's son Simranjeet Singh ("Simranjeet") is the CEO of Shalbro and an officer of Shallu and Elite. *Id.* ¶¶ 14, 16. Devinder's other son Amninder Singh ("Amninder") is an officer of Shallu, Elite, and Shalbro. *Id.* ¶¶ 13, 16.

Plaintiffs performed work in various trades for defendants, including demolition, masonry, tiling, pointing, caulking, scaffolding, bricklaying, cement work, molding, and waterproofing. *Id.* ¶ 89. Devinder, Simranjeet, and Amninder (the "individual defendants") all routinely visited plaintiffs' worksites and gave directions to the individuals working there. *See id.* ¶¶ 40–43. For example, defendant Amninder frequently directed the pace of work and defendant Simranjeet gave instructions on the manner in which materials should be moved. *See id.*

Plaintiffs have pleaded that Devinder wielded ultimate control of operations. They have pleaded upon information and belief that Devinder had final say over all employment applications to Shallu, Shalbro, and Elite (the "corporate defendants"), as well as all hiring and firing decisions

---

[1] At the motion to dismiss stage, I accept as true the facts pleaded by plaintiffs and draw all reasonable inferences in plaintiffs' favor. *See Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013).

by Simranjeet and Amninder. *Id.* ¶ 38. They have alleged that they would text Devinder to report the hours they worked for the corporate defendants. *Id.* ¶ 47. And, plaintiffs have pleaded, regardless of whether they were working for Shallu, Shalbro, or Elite, they would usually raise all employment issues with Devinder. *Id.* ¶ 58.

Based on the complaint, it appears the corporate defendants shared the same systems for job assignment, hour reporting, and payment. The individual defendants used text and/or WhatsApp to send plaintiffs their work schedules, including job locations and the names of workers reporting to each location. *Id.* ¶ 50. Devinder kept track of all of plaintiffs' hours worked regardless of the corporate defendant for which the plaintiffs performed the work. *See id.* ¶ 47. From September 2018 onwards, Shallu and Shalbro used an app called "TSheetsTime Tracker" to record plaintiffs' work hours; Devinder and Amninder instructed employees on how to use the app. *Id.* ¶¶ 53–54.

The corporate defendants also shared equipment, office space, and employees. *Id.* ¶ 64. Shallu, Shalbro, and Elite are registered at the same address in Ozone Park, New York, where there is a shared office space. *Id.* ¶¶ 67–68. Next door is a warehouse, where equipment shared by Shallu, Shalbro, and Elite is housed. *Id.* ¶¶ 65–66, 68. The warehouse entrance displays two signs, one that reads "Shalbro Construction Group," and one that reads, "Shallu Construction Corp." and bears the address of the adjacent corporate office. *Id.* ¶ 67–68. For most of the relevant period, the Shalbro and Shallu shared the same address for service of process. *See id.* ¶¶ 74–76. And for at least two years, a foreman named KG worked for all three corporate defendants. *Id.* ¶ 80.

*Compensation Issues[2]*

Plaintiffs were paid in cash once per month. *Id.* ¶ 90. Plaintiffs were not compensated for the fifteen to thirty minutes they each often spent "off-the-clock" before or after their shifts, which

---

[2] Plaintiff Cantos does not individually plead facts pertaining to compensation issues.

often entailed packing up equipment and cleaning the worksite. *See id.* ¶¶ 185, 208, 221, 234, 252, 265, 277, 289,[3] 299, 309, 318. When plaintiffs worked overtime, they were paid their regular hourly rate for that time, not the one-and-a-half times the regular rate required by law, 29 U.S.C. § 207(a). *See id.* ¶¶ 186, 188, 209, 211, 223, 235, 237, 253, 255, 266–67, 278–79, 288, 290, 298, 300, 317, 319. Plaintiffs never received either a notice of pay rate and basis thereof, as required by NYLL § 195(1), or a statement of wages along with payment, as required by NYLL § 195(3). *Id.* ¶¶ 190–91, 213–14, 224–25, 238–39, 256–57, 269–70, 281–82, 292–93, 302–03, 321–22.

*Insults Aimed at Plaintiffs*

Plaintiffs are Hispanic and of Latin American descent. *Id.* ¶ 99. During Amninder's visits to plaintiffs' worksites, Amninder called plaintiffs (or another Hispanic worker in plaintiffs' presence) "lazy Spanish," "stupid Spanish," and "fucking Spanish." *Id.* ¶¶ 104–05, 108, 111–13, 121, 123–26, 129–31, 136–38, 140–43. Most plaintiffs heard each of these insults anywhere from several times a month to several times a week. *Id.* Amninder would also address plaintiffs in Hindi, using words that plaintiffs' South Asian coworkers explained meant "son of a bitch" and "dog." *Id.* ¶¶ 148–49, 151–54. Amninder frequently complained to plaintiffs that "Hispanic guys are lazy" or that they were inferior to their South Asian coworkers. *Id.* ¶¶ 117, 156.

Several named plaintiffs[4] each made one or more complaints to Devinder about Amninder's epithets. *Id.* ¶¶ 59, 166, 169, 170–71. Devinder told some plaintiffs that he would speak with his son, but asked them to forget about it, told other plaintiffs to ignore Amninder, and brushed off complaints from other plaintiffs, stating that Amninder was young or "crazy." *See id.* ¶¶ 167, 169, 170–71. After

---

[3] Paragraph 289 of the complaint mentions Plaintiff Celio within a section about Plaintiff Pantoja. SAC ¶ 289. I assume that the pleading actually concerns Plaintiff Celio.

[4] In this opinion, "named plaintiffs" refers to those plaintiffs named in the Second Amended Complaint. *See* Second Am. Compl. 1, ECF No. 29 ("SAC"); *cf.* Procedural Background, *infra*.

plaintiffs made these complaints, Devinder promoted Amninder. *Id.* ¶ 172.

Devinder himself regularly addressed two plaintiffs as "gandu," at least once doing so in the presence of a third plaintiff. *Id.* ¶¶ 106, 109, 127, 164–65. Plaintiffs' South Asian coworkers told them that "gandu" was an "ugly word" and Devinder told plaintiff Cardenas that it meant "gay." *Id.* ¶¶ 164–65.

At some point, Shallu and Shalbro employees asked Simranjeet for a raise. *Id.* ¶ 45. Simranjeet denied their request, saying: "You're lucky I don't call immigration." *Id.* On February 23, 2021, shortly after plaintiffs initiated this lawsuit, Simranjeet stated that he "should call immigration on plaintiffs." *Id.* ¶ 46.

***Procedural Background***

On February 17, 2021, plaintiffs Miguel Angel Granda Chica, Julio Raul Vega Cardenas, Diego Mauricio Borga, Joshua Difo, Luis Alfonso Perez Patino, Angel Jose Aguayza Dutan, Carlos Lliguichuzchca Dutan, Celio Neptali Lliguichuzchca, Christian Bastian Munoz Pantoja, and the Estate of Edison Panora sued individual defendants and corporate defendants Shallu and Shalbro on behalf of themselves and all others similarly situated for defendants' failure to pay plaintiffs the minimum wage, overtime compensation, and other monies as required under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and the New York Labor Law, N.Y. Lab. Law §§ 190, *et seq.* and 650, *et seq.* ("NYLL"), and for harassment, discrimination, and creation of a hostile work environment on the basis of race under 42 U.S.C. § 1981, New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 ("NYCHRL"), and New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* ("NYSHRL"). Compl., ECF No. 1. On July 26, 2021, the above-named plaintiffs, subtracting Mr. Borga but adding Franklin Guaraca and Angel Fernando Castillo Cantos, filed their Second Amended Complaint (the "Complaint") against all

defendants. SAC. On July 27, 2021, defendants moved to dismiss all claims against Amninder, Simranjeet, Shalbro, and Elite and to dismiss the harassment, discrimination, and hostile work environment claims in their entirety. Defs.' Mem. of Law in Supp. Mot. To Dismiss ("Defs.' Mot."), ECF No. 31-5. Soon thereafter, in August of 2021, the parties agreed to mediation, Minute Entry, Aug. 27, 2021, but reported in March 2022 that mediation did not result in a settlement, Minute Entry, Mar. 2, 2022.

## DISCUSSION

### I.   Legal Standard

To survive a motion to dismiss, plaintiffs need allege only "enough facts to state a claim to relief that is plausible on its face," raising "a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Nor will "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . suffice." *Id.* Pleadings made on information and belief, while generally inadequate to survive a motion to dismiss, are proper, however, if the facts alleged are "peculiarly within the possession and control of the defendant." *Barrett v. Forest Laboratories, Inc.*, 39 F. Supp. 3d 407, 431–32 (S.D.N.Y. 2014) (quoting *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)).

Before considering the substantive allegations in the complaint, I note that defendants supplemented their motion for partial dismissal with affidavits from Amninder, Simranjeet, and Devinder. *See* Not. Mot., Exs. 2–4, ECF Nos. 31-2–31-4. In ruling on a motion to dismiss, my

review is "limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Conforti v. Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 289 (E.D.N.Y. 2016) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007)). When a party submits supplemental evidence without having been prompted, I must either "exclude the additional material and decide the motion on the complaint alone or . . . convert the motion to one for summary judgment." *Kopec v. Coughlin*, 922 F.2d 152, 154 (2d Cir. 1991) (internal quotation marks and citation omitted). This decision is entirely within my discretion, and hinges on "whether the parties should reasonably have recognized the possibility that the motion might be converted to one for summary judgment or whether they were taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleading." *Garcha v. City of Beacon*, 351 F. Supp. 2d 213, 216 (S.D.N.Y. 2005) (internal quotation marks and citation omitted). Because there is no indication that plaintiffs anticipated that defendants' motion would be converted to one for summary judgment, I will not consider defendants' affidavits.

## II.   Defendants' Motion to Dismiss the FLSA and NYLL Claims Against Them Is Denied.

Defendants move to dismiss plaintiffs' FLSA and NYLL claims (Claims One through Four, Ten, and Eleven) as against individual defendants Amninder and Simranjeet, and corporate defendants Elite and Shalbro on the ground that these defendants were not employers within the ambit of the statutes, alleging that the sole employers were individual defendant Devinder and corporate defendant Shallu. Defs.' Mot. 9–12. In their complaint, plaintiffs allege three separate theories of an employer-employee relationship between plaintiffs and defendants: (1) that all defendants were part of a single integrated enterprise, *see, e.g.*, SAC ¶ 56; (2) that all defendants were joint employers, *see, e.g.*, *id.* ¶ 32; and (3) that all defendants were alter egos, *see, e.g.*, *id.*

¶ 85.[5] I find that plaintiffs have sufficiently alleged facts supporting an inference that Shalbro and Elite were part of a single integrated enterprise with Shallu and an inference that Simranjeet and Amninder were joint employers with Devinder,[6] and thus have sufficiently pleaded that all four moving defendants were plaintiffs' employers within the meaning of the FLSA and the NYLL. I therefore deny defendants' motion to dismiss plaintiffs' FLSA and NYLL claims against Amninder, Simranjeet, Elite, and Shalbro.

The FLSA and NYLL impose liability on any "employer" who violates those statutes' compensation provisions. *Fernandez v. HR Parking Inc.*, 407 F. Supp. 3d 445, 450 (S.D.N.Y. 2019) (citing 29 U.S.C. §§ 216(b), (e)(2)); *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 359 (E.D.N.Y. 2015) (noting that the NYLL "mirrors the FLSA's compensation provisions regarding minimum hourly wages and overtime" (internal quotations marks and citation omitted)). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). An employer can be "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." *Id.* § 203(a). "The statutory standard for employer status under the NYLL is nearly identical to that of the FLSA." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 940 (S.D.N.Y. 2013) (citing 29 U.S.C. § 203(d) and NYLL § 190(3)).[7] Accordingly, in analyzing claims brought under both statutes, courts in this circuit apply the same substantive framework to determine whether an individual or entity has

---

[5] In their motion, defendants developed argumentation on only the joint employer theory. *See* Defs.' Mot. 11–12.

[6] Because I find that defendants were employers under plaintiffs' first two theories, I do not reach the third, that defendants were alter egos.

[7] "'Employer' includes any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service." NYLL § 190(3).

employer status.[8] *See e.g.*, *Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 206 (S.D.N.Y. 2014); *Hart*, 967 F. Supp. 2d at 940. "The Supreme Court has emphasized the 'expansiveness' of the FLSA's definition of employer. Above and beyond the [statute's] plain language, . . . the remedial nature of the statute further warrants an expansive interpretation of its provisions so that they will have 'the widest possible impact' in the national economy." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (internal quotation marks and citation omitted).

### A. Plaintiffs have plausibly alleged that Shallu and Elite were their employers.

For the reasons discussed below, I find that plaintiffs have pleaded facts sufficient to support the inference that Shallu and Elite were part of a single integrated enterprise with Shalbro, and therefore, for the purposes of this motion, Shallu and Elite were plaintiffs' employers under the FLSA and NYLL.

#### 1. Legal Standard

In cases alleging multiple employers, a corporate defendant may be liable as an employer if they were a member of a "single integrated enterprise" that violated the FLSA and NYLL. *See Lihli Fashions Corp. v. NLRB*, 80 F.3d 743, 747 (2d Cir. 1996), *as amended* (May 9, 1996) ("Separate companies are considered a single employer if they are part of a single integrated enterprise." (internal quotation marks and citations omitted)); *see also Coley v. Vanguard Urb. Improvement Ass'n, Inc.*, No. 12-CV-5565 (PKC), 2016 WL 4179942, at *5–6 (E.D.N.Y. Aug. 5, 2016) (applying the single integrated enterprise test in the FLSA context). "[T]he test is usually used to determine whether employers at different arms of a corporate family shared a common employer." *Hsieh Liang*

---

[8] The New York Court of Appeals has not yet resolved whether the NYLL standard for employer status matches the FLSA's standard. *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 940 (S.D.N.Y. 2013) (citing *Irizarry v. Catsimidis*, 722 F.3d 99, 117 (2d Cir. 2013)). However, in the absence of case law to the contrary, courts in this circuit apply the same test. *Id.*; *Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 132 n.19 (S.D.N.Y. 2020) (collecting cases); *Fernandez v. Kinray, Inc.*, 406 F. Supp. 3d 256, 261 n.3 (E.D.N.Y. 2018) (collecting cases).

*Yeh v. Han Dynasty, Inc.*, No. 18-CV-6018 (PAE), 2019 WL 633355, at *6 (S.D.N.Y. Feb. 14, 2019). "[O]ne or more corporate or other organizational units" are a single enterprise for the purposes of these statutes if they perform "related activities . . . either through unified operation or common control . . . for a common business purpose." 29 U.S.C. § 203(r)(1). "In assessing whether multiple defendants constitute a single employer, courts consider the following factors: [i] interrelation of operations; [ii] centralized control of labor relations; [iii] common management; and [iv] common ownership or financial control." *Flores v. 201 W. 103 Corp.*, 256 F. Supp. 3d 433, 440 (S.D.N.Y. 2017) (internal quotation marks and citations omitted). "[N]ot every factor need be present," however, "and no particular factor is controlling. Ultimately, single employer status depends on all the circumstances of the case and is characterized by absence of [the] arm's length relationship found among unintegrated companies." *Lihli Fashions Corp.*, 80 F.3d at 747 (internal quotation marks and citations omitted); *see also Chen v. TYT East Corp.*, No. 10-CV-5288 (PAC), 2012 WL 5871617, at *3 (S.D.N.Y. Mar. 21, 2012). Facts that weigh in favor of finding a single employer include the use of the same employees at multiple locations, the use of the same central payroll office, and common storage space and leases. *Flores*, 256 F. Supp. 3d at 442.

2. *Plaintiffs have sufficiently pleaded that Shallu, Shalbro, and Elite were a single integrated enterprise.*

Plaintiffs have pleaded that the corporate defendants engaged in related activities under the control of Devinder and Shallu for the common business purpose of construction. As to the first factor in assessing the existence of a single integrated enterprise, plaintiffs have sufficiently pleaded that the operations of the various corporate defendants were interrelated: plaintiffs alleged that they performed tasks on construction sites on behalf of all three corporate defendants under the supervision and direction of all three individual defendants, the executives of the corporate defendants, and that all three corporate defendants shared equipment.

As to the second factor, plaintiffs have also sufficiently pleaded that labor relations were under Devinder's centralized control: plaintiffs alleged that they reported their work hours to Devinder for payment regardless of whether they worked for Shallu, Shalbro, or Elite, and that Devinder approved or denied all hiring and firing decisions by Amninder and Simranjeet.

As to the third factor, plaintiffs have sufficiently pleaded facts supporting the inference that the corporate defendants were under common management. Plaintiffs allege that at all relevant times the corporate defendants had common senior personnel: the complaint states upon information and belief that Devinder was Owner/President and CEO of Shallu, CEO of Elite, and an officer of Shalbro; Simranjeet was CEO of Shalbro, and an officer of Shallu and Elite; and Amninder was an officer of all three corporate defendants. These pleadings are supported by concrete examples, including allegations that the individual defendants were involved in the work of all three corporate defendants and the individual defendants hold themselves out as senior officers of the corporate defendants, *see* SAC ¶¶ 70–77. Plaintiffs further allege that the corporate defendants shared foremen, worksites, equipment, office space. These pleadings also cite concrete examples, including allegations that the corporate defendants shared an office, that the warehouse next to the shared office bore signs for both Shallu and Shalbro, and that the same foreman, identified as KG, simultaneously worked for all three corporate defendants for two years. SAC ¶¶ 65–68, 80.

Finally, regarding the fourth factor, common ownership or financial control, the plaintiffs have pleaded upon information and belief that the corporate defendants were all part of a family-owned business. SAC ¶ 78. While this allegation is only somewhat supported by the family relationships and other facts discussed above, the weakness of this factor does not affect my overall conclusion, *see Lihli*, 80 F.3d at 747; *Chen*, 2012 WL 5871617, at *3.

Taking as true the cumulative facts pleaded by plaintiffs, as I must at this stage of the

proceeding, and viewing the totality of the circumstances, I find that the corporate defendants were plausibly part of a single integrated enterprise that employed plaintiffs. Accordingly, plaintiffs have sufficiently pleaded that Elite and Shalbro were their employers for the purposes of the FLSA and NYLL.[9]

### B. Plaintiffs have plausibly alleged that Amninder and Simranjeet were their employers.

For the reasons discussed below, I find that plaintiffs have pleaded facts sufficient to support the inference that Amninder and Simranjeet were joint employers with Devinder, and therefore, for the purposes of this motion, Amninder and Simranjeet were plaintiffs' employers under the FLSA and NYLL.

#### 1. Legal Standard

Under governing Supreme Court authority, the determination of whether an individual is a joint employer must be "grounded in 'economic reality rather than technical concepts.'" *Barfield v. N.Y.C. Health & Hosps Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)). "[E]mployment for FLSA [and NYLL] purposes [is] a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Id.* at 141–42. The central question of this review, however, is whether the individual exercised control over the employees. *Olvera*, 73 F. Supp. 3d at 205; *see also Gil v.*

---

[9] Defendants assert that I should discount the facts pleaded in support of single employer status that plaintiffs have alleged "upon information and belief." According to defendants, these pleadings are insufficient because "[p]laintiffs have not asserted items as outside their knowledge or control as bases for their 'information and belief.'" Defs.' Mot. 11. If defendants mean that, in pleading something upon "information and belief," plaintiffs must explicitly identify what items that form the basis of their belief are outside their knowledge or control, they cite no support for this proposition. To the contrary, at the motion to dismiss stage the court takes reasonable inferences in the plaintiff's favor and can therefore infer which items are outside plaintiffs' knowledge or control. If defendants instead mean that the bases for those items pleaded "upon information and belief" are not actually outside plaintiffs' knowledge or control, defendants do not proffer evidence of plaintiffs' knowledge of or access to such facts.

*Pizzarotti, LLC*, No. 19-CV-3497 (MKV), 2021 WL 1178027 (S.D.N.Y. Mar. 29, 2021) ("When it comes to 'employer' status under the FLSA, control is key." (internal quotation marks and citation omitted)). This focus on control does not mandate that to be considered an employer, an individual must "continuous[ly] monitor[] . . . employees, looking over their shoulders at all times, or [exert] any sort of absolute control." *Herman*, 172 F.3d at 139. Indeed, "[c]ontrol may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA [or NYLL], since such limitations on control do not diminish [its] significance." *Id.* (internal quotation marks, citations, and alterations omitted).

To assess joint employer status, the Second Circuit employs, *inter alia*, an "economic reality" test, which focuses on the factors relevant to the alleged employer's "formal control" of employees: whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the [employees' pay] rate and method of payment, and (4) maintained employment records." *Barfield*, 537 F.3d at 142 (internal quotation marks and citation omitted). No single factor of the test is dispositive, *id.*, nor are the factors exclusive, *id.*, and a plaintiff "need not satisfy all of [the factors] to demonstrate that a particular defendant is an employer," *Ke v. Saigon Grill*, 595 F. Supp. 2d 240, 264 (S.D.N.Y. 2008). Indeed, "any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition." *Herman*, 172 F.3d at 139.

2. *Plaintiffs have sufficiently pleaded that Amninder, Simranjeet, and Devinder were joint employers.*

The complaint pleads sufficient facts to support the inference that Amninder and Simranjeet were joint employers—along with Devinder—of plaintiffs under the FLSA and NYLL.

The economic realities test weighs in favor of finding that Amninder and Simranjeet were plaintiffs' employers. The second, third, and fourth factors support employer status. Regarding the

second factor, plaintiffs have adequately pleaded that Amninder and Simranjeet supervised and controlled employee work schedules and conditions of employment. The complaint alleges that Amninder regularly visited plaintiffs' worksites, where he consulted with and gave instructions to the workers, including regarding the pace of work and "the way, and how quickly, materials should be moved." SAC ¶ 42. The complaint also alleges that Simranjeet often visited plaintiffs' worksites, where he consulted with and gave instructions to the workers, engineers, and architects. More specifically, Simranjeet "often told construction workers the manner in which they should move materials, what materials to move, and how much of the materials to move at worksites." *Id.* ¶ 43. Plaintiffs further plead that Amninder and Simranjeet sent plaintiffs work schedules designating the job sites at which they should work. SAC ¶ 50.[10]

As for the third factor, plaintiffs have sufficiently pleaded that Amninder and Simranjeet determined the plaintiffs' pay rate and method of payment. The complaint alleges upon information and belief that the individual defendants "set policies and made decisions regarding the pay of the employees at Shallu, Shalbro, and Elite." *Id.* ¶ 44. While this allegation is upon information and belief, it is a permissible pleading because the identity of the individual(s) responsible for those decisions can reasonably be inferred to be solely within defendants' knowledge. *See Barrett*, 39 F. Supp. 3d at 431–32 ("The Second Circuit has explained that the 'Twombly plausibility standard . . . does not prevent a plaintiff from pleading facts alleged "upon information and belief" where the facts are peculiarly within the possession and control of the defendant.'" (quoting *Arista Recs.*, 604 F.3d at 120)).

---

[10] Although plaintiffs plead that defendant Devinder "directed the . . . day-to-day schedules of [p]laintiffs via text messages," SAC ¶ 41, plaintiffs also allege that all individual defendants "sent work schedules with job locations and the names of workers reporting to each location . . . via text and/or WhatsApp," *id.* ¶ 50. Given the generous review applied to a complaint on a motion to dismiss, I interpret the latter pleading as encompassing the first.

Regarding the fourth factor, plaintiffs have pleaded upon information and belief that the individual defendants "maintained records" of the corporate defendants, including "the records concerning [p]laintiffs' employment and pay." *Id.* ¶ 52. This pleading is permissible upon information and belief because information about record-keeping is likely solely within defendants' knowledge. Plaintiffs further pleaded that in approximately September 2018, the individual defendants implemented a new payroll system for Shallu and Shalbro, and Devinder and Amninder instructed plaintiffs on how to use the system. SAC ¶¶ 53–54.

While the first factor counsels against a finding that Amninder and Simranjeet were employers, it does not alter my balance of the factors. Plaintiffs plead conflicting facts regarding Amninder's ability to hire and fire employees and do not plead facts directly supporting Simranjeet's ability to hire and fire. The complaint pleads that Amninder fired plaintiff Perez Patino. SAC ¶ 121. Plaintiffs also plead, however, that Devinder approved all hiring and firing decisions made by Amninder and Simranjeet, SAC ¶ 38, an allegation that undercuts an inference of the sons' power to hire and fire employees. Nevertheless, the absence of this factor is not dispositive, *see supra*, and does not change the overall weight of the factors taken together. The economic reality test on the whole militates in favor of finding that Amninder and Simranjeet were plaintiffs' employers.

The Second Circuit has also identified several other factors relevant to determining whether a putative employer exercised "functional control" over an employee. *See Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71–72 (2d Cir. 2003) (listing potentially relevant factors). These factors are most relevant in cases where the plaintiff has pleaded a subcontracting relationship between defendants. *Fernandez*, 407 F. Supp. 3d at 451. Because plaintiffs here do not plead such a relationship, most of the factors are irrelevant to this case. Two functional control factors, however, are relevant to

my analysis: "whether the [alleged employer's] premises and equipment were used for the plaintiffs' work" and "the degree to which the [alleged employer] or [the alleged employer's] agents supervised plaintiffs' work." *Zheng*, 355 F.3d at 71–72 (noting that a court is "free to consider any other factors it deems relevant to its assessment"). Regarding the first factor, plaintiffs pleaded upon information and belief that Amninder and Simranjeet shared equipment with Devinder, SAC ¶¶ 64, and that the corporate defendants, of which Amninder and Simranjeet were officers, SAC ¶¶ 13, 14, shared equipment, SAC ¶ 66. I infer that this is the same equipment plaintiffs used when working for defendants. As to the second factor, plaintiffs have pleaded upon information and belief that the individual defendants all worked on the same construction projects. SAC ¶ 49. This allegation is supported by plaintiffs' factual assertions that Devinder, Amninder, and Simranjeet all made regular visits to inspect plaintiffs' worksites and direct their work, and that the individual defendants all participated in assigning plaintiffs jobs and sending them information about those assignments.

Finally, I note that courts have also found relevant a defendant's assertion of "coercive authority" over alleged employees. *See, e.g.*, *Jian Cheng Liu v. Kueng Chan*, No. 18-CV-5044 (KAM), 2020 WL 978857, at *7–8 (E.D.N.Y. Feb. 28, 2020) (finding that a defendant's threat to one plaintiff that he would "be going back to mainland China" if he did not drop his lawsuit and comment to plaintiffs that defendant could have reported them to the tax enforcement authorities could "reasonably be construed as an exercise of coercive authority . . . over [the] workforce" and thus was a factor weighing in favor of a finding of employer status). Here, plaintiffs have pleaded that Simranjeet twice threatened to "call immigration," SAC ¶¶ 45–46, essentially a threat to instigate a government investigation into plaintiffs and their immigration status. Plaintiffs have therefore pleaded facts that support an inference that Simranjeet asserted coercive authority over

plaintiffs, an inference that weighs in favor of finding that Simranjeet exerted a degree of control over plaintiffs befitting an employer.

Collectively, the totality of the circumstances supports the inference that Amninder and Simranjeet exercised substantial control over plaintiffs' conditions of employment. I therefore find that plaintiffs have sufficiently pleaded that Amninder and Simranjeet were joint employers with Devinder under the FLSA and NYLL.

\* \* \*

Because the complaint plausibly alleges that Amninder and Simranjeet are employers under the joint employer theory, and that Elite and Shalbro are employers under the single integrated enterprise theory, they each can be held liable for overtime and other labor violations under the FLSA and NYLL. I therefore deny defendants' motion to dismiss plaintiffs' FLSA and NYLL claims (Claims One through Four, Ten and Eleven) as to the moving defendants.

## III.   Defendants' Motion to Dismiss the Hostile Work Environment Claims Is Denied.

Defendants argue that plaintiffs' claims under Section 1981, the NYSHRL, and the NYCHRL should be dismissed because plaintiffs failed to plead incidents of sufficient severity or pervasiveness to state a claim for hostile work environment on the basis of race. Defs.' Mot. 15–19. For the following reasons, I find that plaintiffs have sufficiently stated a claim under all three statutes.

### A.   Legal standards.

"Section 1981 prohibits intentional discrimination on the ground of race with respect to, *inter alia*, the enjoyment of the terms of employment." *Love v. Premier Util. Servs., LLC*, 186 F. Supp. 3d 248, 251 (E.D.N.Y. 2016) (internal quotation marks and citation omitted). The NYSHRL similarly "makes it unlawful for an employer to discriminate on the basis of . . . race." *Feingold v. N.Y.*, 366 F.3d 138, 157 (2d Cir. 2004). The discrimination barred under both statutes includes,

*inter alia*, creation of a hostile work environment on account of race. *See, e.g.*, *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000) ("Section 1981 provides a cause of action for race-based employment discrimination based on a hostile work environment."); *Pulizotto v. McMahon*, 406 F. Supp. 3d 277, 300 (S.D.N.Y. 2019) (noting that the NYSHRL prohibits "discrimination by virtue of a hostile working environment"). Under both Section 1981 and the NYSHRL, an individual defendant can be personally liable if the plaintiff pleads that the defendant was personally involved in the discrimination. *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004) ("[A] plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action. . . . Personal liability under [S]ection 1981 must be predicated on the actor's personal involvement." (internal quotation marks and citation omitted)); *Feingold*, 366 F.3d at 157 ("A supervisor is an 'employer' for purposes of establishing liability under the NYSHRL if that supervisor 'actually participates in the conduct giving rise to the discrimination.'" (citation omitted)). "Personal involvement . . . includes not only direct participation in the alleged violation but also gross negligence in the supervision of subordinates who committed the wrongful acts and failure to take action upon receiving information that constitutional violations are occurring." *Patterson*, 375 F.3d at 229.

Hostile work environment claims under Section 1981 and NYSHRL are analyzed under the same standard.[11] *Love*, 186 F. Supp. 3d at 251–52. To survive a motion to dismiss, a plaintiff must plead that he was harassed because of his race and, as a result, his workplace was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Littlejohn v. City*

---

[11] This is the same standard applied to hostile work environment claims under Title VII. *Love*, 186 F. Supp. 3d at 251.

*of N.Y.*, 795 F.3d 297, 320–21 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The plaintiff must plead not only that he subjectively perceived the environment to be abusive; he must also plead facts supporting the inference that the environment was objectively abusive. *Harris*, 510 U.S. at 21–22. To establish that the work environment was objectively abusive, a plaintiff must demonstrate either "that a single incident was [so] extraordinarily severe" as to "transform[] the plaintiff's workplace" or that a "series of incidents" was "sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks and citations omitted); *Desardouin v. City of Rochester*, 708 F.3d 102, 105 (2d Cir. 2013). "For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (internal quotation marks and citation omitted).

In determining whether the work environment was objectively hostile, the court considers the totality of the circumstances, including "(1) the frequency of the discriminatory conduct, (2) its severity, (3) whether [the conduct] is threatening and humiliating, or a mere offensive utterance, and (4) 'whether it unreasonably interferes with [the] employee's work performance.'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Harris*, 510 U.S. at 23); "[T]he offensive conduct need not . . . be intolerable or unendurable" to state a claim, however. *Rogers v. Bank of N.Y. Mellon*, No. 09-CV-8551 (HBP), 2016 WL 4362204, at *11 (S.D.N.Y. Aug. 15, 2016). "[T]he test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of [his] employment *altered for the worse*." *Id.* (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)) (emphasis in original) (internal quotation marks omitted).[12]

---

[12] Defendants argue that plaintiffs must also plead a specific basis for imputing the hostile work environment to the employer. Defs.' Mot. 19. This is a correct statement of law when the claims attribute the abusive conduct to an individual who is not the plaintiff's employer. *See Murray v. N.Y.*

The NYCHRL has a lower threshold for stating a claim than the federal and state statutes. *See Bermudez v. City of N.Y.,* 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011) (noting that the NYCHRL was intended to be more protective than its state and federal counterparts, and thus "[t]he standard for maintaining a hostile work environment claim is lower" under the NYCHRL). Hostile work environment claims brought under the NYCHRL must therefore be analyzed "separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (internal quotation marks and citations omitted). The statute requires only that a plaintiff allege facts supporting the existence of unwanted race-based conduct. N.Y.C. Admin. Code § 8-107; *cf. Bermudez*, 783 F. Supp. 2d at 579 (citing *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 38–39 (N.Y. App. Div. 2009)). A plaintiff successfully states a claim under the NYCHRL "even if the [alleged] harassing conduct does not rise to the level of being 'severe and pervasive.'" *Mihalik*, 715 F.3d at 110 (citation omitted). Nevertheless, "petty slights and trivial inconveniences" are not actionable under the NYCHRL. *Id.* at 111 (quoting *Williams*, 872 N.Y.S.2d at 41).

### B. Defendants' motion is denied as to plaintiffs' Section 1981, NYSHRL, and NYCHRL claims.

Defendants allege that the conduct pleaded by plaintiffs was sporadic and did not "rise above triviality," and so does not state a claim for hostile work environment. Defs.' Mot. 15–19. I disagree. While the severity and pervasiveness of the conduct are questions of fact that should not be decided on a motion to dismiss, I may decide at this stage whether plaintiffs have pleaded sufficient facts to

---

*Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995). Here, by contrast, plaintiffs have sufficiently pleaded that Amninder and Simranjeet are in fact their employers, *see* Discussion II.B.2, *supra*.

support the inference that a race-based hostile work environment existed.[13] *See Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 224 (E.D.N.Y. 2018). Here, plaintiffs have pleaded facts sufficient to state such a claim. The circumstances as pleaded by plaintiffs, if borne out by the evidence, could lead a rational jury to conclude that (1) the harassment faced by plaintiffs was of such quality or quantity that a reasonable employee would find the conditions of his employment altered for the worse, and (2) that plaintiffs subjectively experienced a worsening of their working conditions. Because I find that plaintiffs have stated a claim against defendants under the stricter standard of Section 1981 and the NYSHRL, *infra*, I also find—without separate analysis—that plaintiffs have stated a claim against defendants under the lower standard of the NYCHRL.

    *3.  Plaintiffs have stated a claim against Amninder.*

    Plaintiffs have pleaded a "steady barrage of opprobrious racial comments," *Williams v. Cnty. of Westchester*, 171 F.3d 98, 100–01 (2d Cir. 1999) (internal quotation marks and citation omitted), either directly aimed at them by Amninder or said to other Hispanic workers in their presence. Plaintiffs have accordingly each pleaded a hostile work environment sufficient to defeat defendants' motion to dismiss.

    Plaintiff Difo pleads that he heard Amninder say to a group of Hispanic workers "stupid Spanish," "lazy Spanish," and "fucking Spanish" each at least four times a week over a two-and-a-half-month period. SAC ¶¶ 111–13. Mr. Difo also pleads that Amninder once said to him and others, "you fucking Spanish people can't move fast enough." *Id.* ¶ 116. Mr. Difo further pleads that he frequently heard Amninder disparagingly compare the Hispanic employees to the South Asian employees; for example, Amninder told Mr. Difo that "all you Spanish workers want is money,

---

[13] In accordance with Second Circuit precedent, I treat Hispanic as a race category for the purpose of these statutes. *See Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 224 (E.D.N.Y. 2018) ("In the Second Circuit, it is long settled that Hispanics constitute a race for the purposes of § 1981.").

money, money," and that Mr. Difo should be like the South Asian workers, who did not object to being paid once a month. *Id.* ¶¶ 117–18. Mr. Difo pleads that because of these statements he "would often try to avoid" Amninder "so that he could continue to work without ridicule." *Id.* ¶ 115.

Plaintiff Aguayza Dutan pleads that, in the approximately two-and-a-half years he worked for defendants, he heard Amninder say "stupid Spanish" one to four times a month, "lazy Spanish" two to four times a month, and "fucking Spanish" at least one time. *Id.* ¶¶ 122–26.

Plaintiff Cantos pleads that during his employment with defendants from approximately January 2017 through April 2018, then August 2018 through approximately March 8, 2021, he heard Amninder say "fucking Spanish" on approximately half the days he worked for defendants, and "lazy Spanish" at least twice a day. *Id.* ¶¶ 139, 142–43. Mr. Cantos further pleads that he once heard Amninder call him a "stupid Spanish" because he was not working hard enough, and that over the course of his employment he heard Amninder say "stupid Spanish" about five times. *Id.* ¶¶ 140–41.

Plaintiff Guaraca pleads that, for the approximately five to six months he worked on a job with Amninder, he heard Amninder say "stupid Spanish" about six to seven times a month and "fucking Spanish" about twice a month. *Id.* ¶¶ 136, 138. Mr. Guaraca also pleads that between approximately 2016 or 2017 and February 2021, Amninder called him "lazy Spanish" approximately four times a month. *Id.* ¶ 137.

Plaintiff Chica pleads that in the first six weeks of 2019, Amninder berated him as a "lazy Spanish" about two to three times a week and as a "stupid Spanish" one to three times a week. *Id.* ¶¶ 103, 104–05.

Plaintiff Cardenas pleads that in February 2019, he heard Amninder say "fucking Spanish" to a group of Hispanic workers on at least one occasion. *Id.* ¶ 108.

Plaintiff Perez Patino pleads that when he once told Amninder that he would be late to work,

Amninder replied that Mr. Perez Patino was a "stupid Spanish" and fired him later that day. *Id.* ¶ 121.

Plaintiff Estate of Edison Panora pleads that Amninder called Mr. Panora "fucking Spanish," "lazy Spanish," "stupid Spanish," a "Mexican," and a "fucking Mexican" on a regular basis.[14] *Id.* ¶¶ 129–32. The Estate plaintiffs also plead that Mr. Panora complained to his wife that he was "tired of going to work every day" because defendants were so "racist," *id.* ¶ 133, and that, because of his treatment by defendants, Mr. Panora feared that every employer would treat him in a racially discriminatory manner, *see id.* ¶ 134.

All plaintiffs plead that Amninder frequently insulted them in Hindi.[15] According to plaintiffs, Amninder frequently referred to them as "kameenas" and "madlukas," words which plaintiffs learned from their Hindi-speaking coworkers roughly translated to "sons of bitches." *Id.* ¶¶ 148–49, 151–52. Plaintiffs further plead that Amninder often said "chal chal kutta" to them, which their coworkers roughly translated as "hurry hurry dog." *Id.* ¶¶ 144, 153–54.

Finally, plaintiffs plead that Amninder frequently called them "gandu." *Id.* ¶¶ 127, 146. While plaintiffs do not plead that they learned about the definition of the term at the time, they do plead that when Amninder used terms they did not know, they still understood the term "to be derogatory based on his angry demeanor and condescending tone" when using the epithets. *Id.* ¶¶ 127, 158.

It is true that these Hindi insults did not explicitly address plaintiffs' race or ethnicity. However, "incidents comprising a hostile work environment claim need not refer to any trait or condition on the basis of which the discrimination has occurred, so long as the incidents can

---

[14] Mr. Panora told Amninder multiple times that he was not Mexican. *Id.* ¶ 132.

[15] The complaint alleges on behalf of all plaintiffs that they were subjected to Amninder's Hindi insults. Under the generous standard for a motion to dismiss, I construe these pleadings in the light most favorable to plaintiffs. I therefore accept for the purpose of this motion that all plaintiffs frequently heard these epithets and either understood what they meant or construed them as insulting based on their race.

reasonably be interpreted as having taken place on the basis of that trait or condition." *Svenningsen v. Coll. of Staten Island*, No. 01-CV-7550 (SJ), 2003 WL 21143076, at *2 (E.D.N.Y. Mar. 28, 2003). The totality of the circumstances pleaded in the complaint supports the inference that Amninder used these Hindi insults because of plaintiffs' race. Such circumstances include plaintiffs' allegations that Amninder did not use these epithets against Shallu, Shalbro, and Elite employees of South Asian descent and that Amninder's use of these Hindi insults caused employees of South Asian descent to laugh at plaintiffs. SAC ¶¶ 101, 157. I therefore find that plaintiffs have pleaded sufficient facts to support the inference that Amninder used these derogatory terms to mark plaintiffs as inferior and did so on the basis of race.

Viewing the totality of the circumstances pleaded, I find that each plaintiff has stated a hostile work environment claim against Amninder sufficient to survive a motion to dismiss. Plaintiffs have pleaded that Amninder's use of epithets against them and against other Hispanic employees in their presence created a subjectively hostile work environment. *See id.* ¶¶ 159–61. Furthermore, combining plaintiffs' individual pleadings about Amninder's English insults with the pleadings on behalf of all plaintiffs regarding Amninder's Hindi insults, plaintiffs have also sufficiently pleaded that they each experienced a work environment that was objectively hostile due to the severity and pervasiveness of Amninder's "intimidation, ridicule, and insult," *Alfano*, 294 F.3d at 373. As described above, named plaintiffs have pleaded that Amninder frequently used explicitly and implicitly racist epithets against them and other Hispanic workers, in ways that would humiliate a reasonable person and would unreasonably interfere with their work performance.

4. *Plaintiffs have stated a claim against Devinder.*

Plaintiffs have stated a claim for hostile work environment against Devinder by pleading

that he failed to address Amninder's behavior.[16] "In general, an employer will be liable for a hostile

. . . environment in the workplace when the employer kn[ew] of the hostile work environment but

fail[ed] to take appropriate remedial steps." *Smith v. Town of Hempstead*, 798 F. Supp. 2d 443,

453–54 (E.D.N.Y. 2011); *see also Duch v. Jakubek*, 588 F.3d 757, 763 (2d Cir. 2009) ("[E]mployer

defendants can . . . be held liable if plaintiff can show that [the employer] knew, or in the exercise

of reasonable care should have known, about the harassment yet failed to take appropriate remedial

action." (internal quotation marks and citation omitted)). Here, plaintiffs have plausibly pleaded

that multiple named plaintiffs informed Devinder of the hostile work environment Amninder was

creating. *See* ¶¶ 59, 166, 169–71. According to plaintiffs, however, in response to their complaints,

Devinder sought only to quell plaintiffs' criticisms, *see e.g.*, *id.* ¶ (telling plaintiff Dutan that

Amninder "must have just smoked marijuana and was so high, so [he] should *id.* ¶ 169 (telling

plaintiff Difo, "ok, ok, don't worry, [Amninder is] still learning, be happy, be happy"), and even

promoted Amninder, *id.* ¶ 172. Furthermore, plaintiffs have plausibly pleaded that after putting

Devinder on notice of Amninder's epithets, Amninder's discriminatory comments continued. *Id.*

¶ 170–71. Together, these allegations strongly support the inference that Devinder did not take

appropriate remedial steps despite knowing about Amninder's abuse.

   5.  *Plaintiffs have stated a claim against Simranjeet.*

   The complaint alleges that Simranjeet twice threatened to "call immigration" on plaintiffs,

first after they asked for a raise, and again after plaintiffs filed the instant action. *Id.* ¶¶ 45–46.

These threats were plainly on the basis of race: the clear inference is that Simranjeet assumed that

plaintiffs, because of their Hispanic ethnicity, were immigrants and undocumented. While only

two such incidents are alleged, the potential harm to plaintiffs implied by such threats was of a

---

[16] Because I find that Devinder is liable to plaintiffs for Amninder's behavior, I do not reach whether Devinder is liable for his own insults towards plaintiffs.

magnitude so severe as to state a hostile work environment claim. At minimum, a supervisor's threat to report an employee to immigration enforcement is implicitly a threat to terminate that employee. Even if the employee is a citizen or legal permanent resident, "calling immigration" can still risk significant entanglement with law enforcement. And if any plaintiff lacked documentation, a threat to call immigration was a threat to instigate their deportation. Threats of this magnitude are therefore sufficiently severe as to interfere with an employee's conditions of employment, thus creating a hostile work environment. *Cf. Lewis v. Conn. Dep't of Corr.*, 355 F. Supp. 2d 607, 622 (D. Conn. 2005) ("The prototypical 'single incident' that creates a hostile work environment usually involves a clear, expressed, overt, and truly egregious act of discrimination."). Indeed, the facts pleaded by plaintiffs suggest that Simranjeet intended by his threats to deter plaintiffs from exercising their legal rights. While plaintiffs do not specifically plead their subjective reactions to these threats, their subjective reactions are so easily inferred from the severity of Simranjeet's threats that they have pleaded ample facts to render their claim plausible. I accordingly find that plaintiffs have stated a hostile work environment claim against Simranjeet and deny defendants' motion to dismiss plaintiffs' Section 1981, NYSHRL, and NYCHRL claims (Claims Five through Nine).

## CONCLUSION

For the foregoing reasons, defendants' motions are denied.

SO ORDERED.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:      March 31, 2022
            Brooklyn, New York

26